## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:16-cr-00011-SI |
| Respondent, | 3:16-cr-00013-SI |
| v. | **OPINION AND ORDER** |
| **CONNIE and JAMES BEASLEY**, | |
| Defendants-Appellants. | |

Billy J. Williams, United States Attorney, Seth D. Uram, Assistant United States Attorney, and Allie Boyd (certified law student appearing with permission), UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF OREGON, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Respondent.

William D. Brandt, WILLIAM D. BRANDT, P.C., 495 State Street, Suite 500B, Salem, OR 97301. Of Attorneys for Defendants-Appellants.

**Michael H. Simon, District Judge.**

Defendants-Appellants Connie and James Beasley (collectively "the Beasleys" or "Defendants-Appellants") appeal from the judgment of United States Magistrate Judge John V. Acosta, finding the Beasleys each guilty of the petty offense of conducting work activities on federal lands encompassed by regulation without a special-use authorization. The charges arose from the Beasleys' business of renting all-terrain vehicles ("ATVs") for use at the Sand Lake

PAGE 1 – OPINION AND ORDER

Recreation Area sand dunes near Pacific City, Oregon. After denying the Beasleys' motions to dismiss, the court held a bench trial on January 8, 2016. Judge Acosta concluded that the Beasleys' business activities violated 36 C.F.R. § 261.10(c) and imposed on each defendant a fine of $300 and a $25 processing fee for a total of $325 collateral forfeiture per violation. The offenses are Class B misdemeanors, which are petty offenses. 18 U.S.C. § 19. The Beasleys now appeal the Magistrate Court's denial of their motions to dismiss and their convictions. For the reasons stated below, the Court affirms both judgments of conviction issued by the Magistrate Court, including affirming the denial of the Beasleys' motions to dismiss.

## STANDARDS

The court has jurisdiction over this appeal under Federal Rule of Criminal Procedure 58(g)(2)(B). In an appeal from a magistrate court's judgment of conviction, "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).

## BACKGROUND

The Beasleys own and operate Sandslingers LLC ("Sandslingers"), an ATV rental business, in Pacific City, Oregon. As part of their business, the Beasleys rent ATVs to customers and transport those ATVs to the Sand Lake Recreation Area sand dunes, approximately 8 miles from Sandslingers' office. The public may enter the Sand Lake Recreation Area via two legal points of access: (1) Galloway Road, maintained by Tillamook County; and (2) Derrick Road, maintained by the United States Forest Service ("USFS"). Derrick Road leads to the Derrick Road Dispersed Area, where visitors and ATV riders may park, after paying a day-use fee at a USFS onsite pay station. The USFS uses and maintains the entrance to the Derrick Road Dispersed Area pursuant to an easement (the "Easement") granted to the federal government by private landowners. The Beasleys use the Easement to deliver ATVs to the Sand Lake

PAGE 2 – OPINION AND ORDER

Recreation Area, just before entering the Derrick Road Dispersed Area. The Beasleys do not have a special use permit that would allow them to conduct commercial activities on federal land.

On August 20, 2015, USFS Officer James Necessary ("Officer Necessary") saw Connie Beasley ("Ms. Beasley") on the Easement just before the entrance to the Derrick Road Dispersed Area. Officer Necessary testified that Ms. Beasley was "outfitting," meaning that she was bringing equipment to a location to make a profit. According to Officer Necessary, Ms. Beasley had a trailer and multiple ATVs with her. Officer Necessary could not tell, however, if Ms. Beasley was picking up or dropping off the ATVs. Officer Necessary talked with Ms. Beasley for more than an hour. She told Officer Necessary that the ATV rental business was the Beasleys' livelihood, and she asked questions about whether her son could continue to deliver ATVs to the area because he was not an "employee" of Sandslingers. Officer Necessary explained that Sandslingers would need a permit to continue outfitting on land regulated by the USFS and that he would not give Ms. Beasley any more warnings.

On August 22, 2015, Officer Necessary and USFS Officer Travis Sisco ("Officer Sisco") saw Brandon Beasley ("Brandon"), whom they knew to be the Beasleys' son, working on some ATVs within the Derrick Road Dispersed Area. Some of the ATVs were Polaris Scramblers, an older style of ATV. Officer Sisco recognized this type of ATV as one of the types rented out by Sandslingers. The officers asked Brandon how business was going, and Brandon responded that "business was good." Officer Sisco testified that Brandon appeared to be refueling or fixing three or four ATVs for people standing nearby. Office Sisco further testified that before that day, he had seen Brandon doing onsite training sessions for other ATV riders. Officer Necessary also

testified that on previous occasions, he heard Brandon say that he delivered ATVs for his parents.

On August 23, 2015, while Officer Sisco was patrolling near the Derrick Road Dispersed Area, a man pulled up in a car and asked Officer Sisco where to park. The man explained that he intended to rent ATVs from Sandslingers and that Sandslingers personnel were meeting him there. Officer Sisco then saw James Beasley ("Mr. Beasley") pull up in a black Dodge pickup truck, which Officer Sisco recognized as a Sandslingers vehicle. While parked off to the side of the road just before the entrance to the Derrick Road Dispersed Area, Mr. Beasley started unloading ATVs from a trailer attached to the truck. Officer Sisco also saw Ms. Beasley nearby on the Easement. Ms. Beasley had with her a trailer attached to a white Toyota FJ Cruiser. Ms. Beasley's trailer also contained ATVs. A day later, Officer Necessary had a telephone conversation with Ms. Beasley and again told her she needed to go through the proper permitting process to continue outfitting on USFS land.

On August 26, 2015, Officer Necessary visited the Sandslingers' office in Pacific City. He spoke with Ms. Beasley, who told Officer Necessary that she thought her son could continue delivering ATVs to the Sand Lake Recreation Area because he was not employed by Sandslingers. Officer Necessary explained that Sandslingers would still need a permit, even if only Brandon delivered ATVs to the entrance of the Derrick Road Dispersed Area. Officer Necessary then issued to Ms. Beasley Central Violations Bureau ("CVB") Violation Notice Number F4316393 for conducting work activity or services without a special-use authorization in violation of 36 C.F.R. § 261.10(c).

One month later, on September 26, 2015, Officer Necessary observed Mr. Beasley at the entrance to the Derrick Road Dispersed Area with a trailer full of ATVs. Officer Necessary saw

between five and eight ATVs. A group of people was gathered nearby, and Officer Necessary believed that the group was waiting to pick up ATVs from Mr. Beasley. None of the people appeared to be assisting Mr. Beasley with unloading or refueling the ATVs. Later that day, Officer Necessary met Mr. Beasley at Sandslingers' office and asked him why Sandslingers continued to outfit on USFS land without a permit. Mr. Beasley responded that "they had a right to be out there." Officer Necessary then issued to Mr. Beasley CVB Violation Notice Number F4316395 for conducting work activity or services without a special-use authorization in violation of 36 C.F.R. § 261.10(c).

According to Officers Sisco and Necessary, the Sandslingers operation affected Forest Service land in at least two ways. First, the Beasleys loaded and unloaded ATVs on the side of the Easement near the entrance to the Derrick Road Dispersed Area. In contrast, individual recreational visitors to the sand dunes park in designated parking spots within the Derrick Road Dispersed Area, after paying an entrance fee, before unloading ATVs. The Beasleys' activity in loading and unloading ATVs sometimes congested the area and blocked the pay station where visitors pay their mandatory day-use fee. Second, Sandslingers sometimes rents ATVs to people who have little experience driving ATVs. Officer Sisco knew of at least one accident involving a Sandslingers customer and had safety concerns about Sandslingers' operations and inexperienced customers.

## DISCUSSION

USFS regulation 36 C.F.R. § 261.10(c) prohibits "[s]elling or offering for sale any merchandise or conducting any kind of work activity or service unless authorized by Federal law, regulation, or special-use authorization." The prohibition applies when "[a]n act or omission occurs in the National Forest System or on a National Forest System road or trail." 36 C.F.R. § 261.1(a)(1). The prohibition also applies when "[a]n act or omission affects, threatens, or

endangers property of the United States administered by the Forest Service." 36 C.F.R.

§ 261.1(a)(2).

In order for someone to be found guilty of violating 36 C.F.R. § 261.10(c), the
government must prove three elements: (1) that the defendant was conducting work activity or
service; (2) that the work activity or service occurred on lands encompassed by the regulation;
and (3) that the work activity or service occurred without a special-use authorization. *United
States v. Parker*, 761 F.3d 986, 993 (9th Cir. 2014). The Beasleys dispute only the first two
elements. Ms. Beasley also disputes the sufficiency of the CVB Violation Notice she received.

## A. Work Activity or Service

The Beasleys argue that the government failed to present sufficient evidence that they
engaged in work activity or service on the dates of the alleged offenses. The government
acknowledges that Ms. Beasley did not commit a violation on August 26, 2015. Rather, she was
cited on that day for violations that occurred on August 20, 22, and 23, 2015. Ms. Beasley argues
that the evidence is insufficient to convict her of violating 36 C.F.R. § 261.10(c) on
August 22, 2015, because only her son delivered ATVs to the Sand Lake Recreation Area on that
day. The government responds that Brandon acted as Ms. Beasley's agent and that even if
Ms. Beasley could not be held liable for Brandon's actions on August 22, there is sufficient
evidence to convict her of violations on August 20 and 23, 2015. Mr. Beasley argues that there is
insufficient evidence that he delivered ATVs to "paying customers" on September 26, 2015. The
government responds that the circumstantial evidence is sufficient to establish Mr. Beasley's
conduct beyond a reasonable doubt.

In reviewing the sufficiency of the evidence, the relevant question for the appellate court
"is whether, after viewing the evidence in the light most favorable to the prosecution, *any*
rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012) ("[T]he only question under *Jackson* is whether [the trier-of-fact's] finding was so insupportable as to fall below the threshold of bare rationality.").

### 1. Ms. Beasley's Conduct

The law allows a principal to be found guilty of activities performed by his or her agent. *See* 18 U.S.C. § 2(b) ("Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."). Accordingly, a person can be held liable for willfully causing another to perform activity that would be unlawful under 36 C.F.R. § 261.10(c) if he or she directly performed the work. *See United States v. Tellstrom*, 2013 WL 1499491, at *5 (E.D. Cal. Apr. 11, 2013) (finding the defendant guilty of unlawfully cutting or damaging timber without a permit where "the evidence support[ed] a finding that defendant was responsible for the resource damage to the trees and vegetation" but "the work was performed by others").

The evidence establishes that Ms. Beasley twice told USFS officers that she believed her son could continue to deliver ATVs for Sandslingers without a permit because Sandslingers did not employ him. Officer Sisco testified that the ATVs that Brandon appeared to be refueling, preparing, or repairing on August 22, 2015, were the type of ATV supplied by Sandslingers. That day, Officer Sisco observed people standing nearby as if waiting for the ATVs on which Brandon was working. Brandon also told USFS officers that "business was good," indicating that he was acting on behalf of Sandslingers. Furthermore, on previous occasions, Officer Necessary heard Brandon say that he delivered ATVs for his parents. This evidence is sufficient to allow a rational trier-of-fact to find beyond a reasonable doubt that Brandon acted as Ms. Beasley's agent and conducted unlawful work activity on her behalf.

Additionally, Officer Necessary spoke with Ms. Beasley on August 20, 2015, about outfitting on USFS land without a permit. She acknowledged that this business was her livelihood and asked questions about how to continue renting out ATVs for use in the Sand Lake Recreation Area. On August 23, 2015, a man told Officer Sisco that he was at the Derrick Road Dispersed Area to pick up ATVs from Sandslingers. Shortly after this conversation, Officer Sisco saw Ms. Beasley parked at the entrance to the Derrick Road Dispersed Area with a trailer full of ATVs. Further, at trial, Ms. Beasley's counsel conceded that although no money exchanged hands at the Sand Lake Recreation Area, the Beasleys did not dispute that they "transported ATVs to the Sand Lake Recreation area in their vehicle for customers who come in." This evidence is sufficient to allow a rational trier-of-fact to find beyond a reasonable doubt that Ms. Beasley conducted work activity or service at or near the entrance to the Derrick Road Dispersed Area on August 20 and 23, 2015. Therefore, sufficient evidence exists to establish the first element of a 36 C.F.R. § 261.10(c) violation with regard to Ms. Beasley's conviction.

### 2.  Mr. Beasley's Conduct

On September 26, 2015, Officer Necessary observed Mr. Beasley with a pickup truck, trailer, and five to eight ATVs. A group of people waited nearby and did not assist Mr. Beasley with the unloading or refueling of the ATVs. Officer Necessary believed this behavior was consistent with people who were customers rather than friends or acquaintances of Mr. Beasley, and Officer Beasley did not believe that the Beasleys could personally use all the ATVs present. Viewing the evidence in the light most favorable to the prosecution, the Court concludes that this circumstantial evidence is sufficient for a rational trier-of-fact to find that Mr. Beasley engaged in work activity or service at or near the entrance to the Derrick Road Dispersed Area on

September 26, 2015. Therefore, sufficient evidence exists to establish the first element of a

36 C.F.R. § 261.10(c) violation with regard to Mr. Beasley's conviction.[1]

**B.  Lands Encompassed by Regulation**

The Beasleys also argue that the Magistrate Court erred in denying their motions to

dismiss and finding them guilty of the charges against them for three reasons: (1) the Easement

prevents the USFS from regulating the Beasleys' activities; (2) the Easement is not a National

Forest System road or trail; and (3) there is no evidence that the Beasleys' activities affected,

threatened, or endangered property administered by the USFS. The Beasleys' arguments all

concern whether their activities occurred on lands encompassed by 36 C.F.R. § 261.10(c).

In so far as the Magistrate Court's decisions rest on interpretation of the relevant statutes

and other questions of law, the Court reviews the decisions *de novo*, as the Ninth Circuit would

review such decisions by this Court. *United States v. Olander*, 572 F.3d 764, 766 (9th Cir. 2009)

("We review de novo a district court's decision whether to dismiss a charge in an indictment

based on its interpretation of a federal statute."); *United States v. Velarde-Gavarrete*, 975 F.2d

---

[1] The Beasleys argue that the government failed to present evidence that their activities are meaningfully different from what the general public lawfully may do: transport an ATV to the Sand Lake Recreation Area. For the reasons discussed, however, there is sufficient evidence that the Beasleys engaged in work activity or provided services, which is conduct that is legally distinct from engaging in personal recreation under 36 C.F.R. § 261.10(c). The Beasleys also argue that the government has no rational reason for distinguishing between work activity and personal recreation. Classifications—such as the one at issue here—that are not based on fundamental rights or suspect classes are reviewed under the rational basis test. A classification survives this test "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993). The rational basis test mandates an "exceedingly low level of judicial scrutiny." *Aleman v. Glickman*, 217 F.3d 1191, 1201 (9th Cir. 2000). Here, the government, through the testimony of Officer Sisco and Officer Necessary, has offered a legitimate governmental purpose for differentiating between work activity and personal recreation sufficient to survive the rational basis test. The government has an interest in regulating work activity because it increases the volume of traffic at a USFS-regulated site in ways that interfere with individual visitors' ability safely and conveniently to use and enjoy the public site.

672, 674 (9th Cir. 1992) ("Questions of law are reviewed *de novo.*"). The Court reviews the

magistrate court's underlying factual findings for "clear error." *Velarde-Gavarrete*, 975 F.2d at

674. Concerning the Beasleys' sufficiency of the evidence argument, the Court, as discussed

above, considers whether "*any* rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

> **1.  Whether the Easement Prevents the USFS from Regulating the Beasleys'**
> **Activities**

Private landowners William and Anna Derrick granted the Easement at the entrance to

the Derrick Road Dispersed Area to the federal government in 1954. The terms of the Easement

are as follows:

> ***The rights, privileges and authorities herein granted are for full***
> ***use and enjoyment by the Government*** for any and all purposes
> deemed necessary or desirable in connection with the control,
> management and administration of the national forest or the
> resources thereof, ***and, insofar as compatible there-with, use by***
> ***the general public*** and the rights, privileges and authorities herein
> granted shall continue as long as used for the purpose granted but
> if for a period of _____ years the Government shall cease to use the
> rights, privileges and authorities for the purposes granted or shall
> abandon the use of the easement herein granted, then, in any such
> events, the Grantor may terminate this easement and all rights
> hereunder shall revert to the holder of the fee title to the lands.

(emphasis added). The Beasleys argue that because the Easement does not limit the public's use

to non-commercial purposes, their activity on the Easement comports with the grantors' intent

and cannot be prohibited by the federal government. According to the Beasleys, 36 C.F.R.

§ 261.10(c) therefore does not encompass the Easement.

Because the land conveyed by the Easement is located in Oregon, the Court applies

Oregon law. *See L.A. & Salt Lake R.R. Co v. United States*, 140 F.2d 436, 437 (9th Cir. 1944)

("Since the land [the deeds] describe is situated in California, interpretation of the deeds is

governed by California law."). The Beasleys concede that the Court should interpret the

Easement as it would any Oregon contract. In Oregon, "[t]he interpretation of an express easement . . . is a question of law for the court," and courts follow ordinary principles of contract interpretation. *Kell v. Oppenlander*, 154 Or. App. 422, 426 (1998).

The leading Oregon case on contract interpretation is *Yogman v. Parrott*, 325 Or. 358 (1997). In *Yogman*, the Oregon Supreme Court established a three-step process for interpreting a disputed contractual provision. First, the court must determine whether, as a matter of law, the relevant provision is ambiguous. *Id.* at 361. A contractual provision is ambiguous if it can "reasonably be given more than one plausible interpretation." *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379 (2011). "The court must, if possible, construe the contract so as to give effect to all of its provisions." *Id.* Further, when construing a contract provision, the court is "not to insert what has been omitted, or to omit what has been inserted." Or. Rev. Stats. § 42.230; *see also Yogman*, 325 Or. at 361 (citing Or. Rev. Stats. § 42.230 at step one of the analysis). The analysis ends if the meaning of the provision is clear from the text and context of the contract. *Williams*, 351 Or. at 379-80. The court then applies the contractual term to the facts. *See Yogman*, 325 Or. at 361.

If the provision is ambiguous, however, the court proceeds to the second step. *Id.* at 363. At the second step, the trier-of-fact examines extrinsic evidence of the contracting parties' intent and construes the contractual provision consistent with that intent, if such a resolution can be determined. *Id.* Oregon follows the objective theory of contracts, and relevant evidence at step two may include actual "manifestations of intent, as evidenced by the parties' communications and acts." *Holdner v. Holdner*, 176 Or. App. 111, 120 (2001) (quotation marks omitted). If, after examining extrinsic evidence, the contract is still ambiguous, the court applies appropriate maxims of construction at the third step. *Yogman*, 326 Or. at 364.

PAGE 11 – OPINION AND ORDER

Here, the plain text of the Easement does not exempt public uses from regulation by the USFS. The Easement grants the government primary use of the land, and the public may use the land only in so far as the public's use is compatible with the government's control, management, and administration of the National Forest System or its resources. Nothing in the Easement limits the USFS's ability to determine whether public use, including commercial use, is compatible with that control, management, and administration. The terms of the Easement, therefore, are unambiguous: the USFS has discretion to determine what types of public use are compatible with the government's control of the Easement.[2] The unambiguous text of the Easement does not prevent 36 C.F.R. § 261.10(c) from applying to the Beasleys' activities.[3]

### 2.    Whether the Easement Is a National Forest System Road or Trail

The Beasleys argue that because the USFS has a non-exclusive easement over the entrance to the Derrick Road Dispersed Area, the land is not a National Forest System road or trail encompassed by 36 C.F.R. § 261.10(c). The prohibition of 36 C.F.R. § 261.10(c) applies to any work activity or service that "occurs in the National Forest System or on a National Forest System road or trail." 36 C.F.R. § 261.1(a)(1). A "National Forest System road [or trail]" is "[a] forest road [or trail] other than a road [or trail] which has been authorized by a legally

---

[2] Because the Court finds that the Easement is unambiguous, the Court does not reach *Yogman* step two.

[3] The two cases cited by the Beasleys in support of their argument that the Easement prevents the USFS from limiting public use are inapposite. *State ex rel. Department of Fish & Wildlife v. Kortge*, 84 Or. App. 153 (1987), concerned only the rights of landowners, who reserved certain rights in a sale of property to the State, as against the State, the fee holder. The court found that under the terms of the land grant, the State could "use its land in any way that does not unreasonably interfere with [the landowners'] rights to use the land for agricultural, horticultural or grazing purposes," including opening the land to public use. *Id.* at 158. *Knight v. Nyara*, 240 Or. App. 586 (2011), involved the holders of dominant and servient estates. Here, the Beasleys have no claim to the property in question other than as members of the general public granted secondary use of the Easement.

PAGE 12 – OPINION AND ORDER

documented right-of-way held by a State, county, or other local public road authority." 36 C.F.R. § 261.2. A "[f]orest road or trail" is "[a] road or trail *wholly or partly within or adjacent to and serving the National Forest System* that the Forest Service determines is necessary for the protection, administration, and utilization of the National Forest System and the use and development of its resources." *Id.* (emphasis added).

Here, the Easement is located near the entrance to the Sand Lake Recreation Area, part of the National Forest System. The Easement serves as one of only two access points to the Sand Lake Recreation Area and allows entry to the Derrick Road Dispersed Area, which is within the National Forest System. USFS officers patrol this area, and the USFS charges a fee for use of the Derrick Road Dispersed Area. The Easement would potentially revert back to the fee holder if the government ceased to use it in connection with the control, management, and administration of the National Forest System or the resources thereof. The evidence establishes that the Easement is adjacent to and serves the National Forest System and that the USFS has determined that the Easement is necessary for the protection, administration, and utilization of the National Forest System and the use and development of its resources. Thus, the Easement is a National Forest System road or trail subject to regulation under 36 C.F.R. § 261.10(c).

### 3. Whether the Beasley's Activities Affect, Threaten, or Endanger Property of the United States Administered by the Forest Service

The Beasleys also argue that their activities are not subject to 36 C.F.R. § 261.10(c) because there is no evidence that they affected, threatened, or endangered USFS land under 36 C.F.R. § 261.1(a)(2).[4] In addition to activity occurring on a National Forest System road or

---

[4] The government need only show that one provision of 36 C.F.R. § 261.1(a) applies to the land in question. Because the Court finds that 36 C.F.R. § 261.1(a)(1) applies, the government need not prove that the Beasley's activities affected, threatened, or endangered USFS land under 36 C.F.R. § 261.1(a)(2). Nonetheless, Court analyzes whether 36 C.F.R. § 261.1(a)(2) would apply in the alternative.

trail, 36 C.F.R. § 261.10(c) also applies to any work activity or service that "affects, threatens, or endangers property of the United States administered by the Forest Service." 36 C.F.R. § 261.1(a)(2). The Ninth Circuit has interpreted this provision broadly. In *Parker*, the Ninth Circuit noted that "commercial activity" may "ha[ve] implications for National Forest land even if commenced on property adjacent to the forest." 761 F.3d at 990. For instance, "[r]enting snowmobiles to multiple individuals untrained or inexperienced in their operation might cause fire, safety or environmental hazards within the National Forest." *Id.* (alteration in original) (quoting the magistrate judge's decision). Therefore, the Ninth Circuit held that "running a commercial operation that was predicated on dispatching snowmobiles into the National Forest . . . without obtaining the required special use permit . . . 'affect[ed], threaten[ed], or endanger[ed]' National Forest lands." *Id.* (alteration in original) (quoting 36 C.F.R. § 261.1(a)(2)).[5]

Similar to the facts of *Parker*, renting ATVs to multiple individuals untrained or inexperienced in their operation might cause fire, safety, or environmental hazards within the National Forest. Additionally, USFS officers testified that the Beasleys' operation blocks other visitors from using the pay station at the entrance to the Derrick Road Dispersed Area and creates vehicle congestion. The Beasleys ran a commercial operation predicated on unloading ATVs at the entrance and dispatching ATVs into the National Forest, and they did so without obtaining the required special-use permit. The Magistrate Court did not err in finding that these

---

[5] The Beasleys argue that the text of the document granting the Easement distinguishes this case from *Parker*. As discussed above, however, the Easement does not grant the public an unconditional right to use the land and gives the USFS the authority to control the Easement. The Easement therefore makes the land in question even more amenable to federal regulation than the land in *Parker*, which was granted to the county government.

facts constituted evidence of activity "affect[ing], threaten[ing], or endanger[ing]" National

Forest lands, 36 C.F.R. § 261.1(a)(2), that is subject to 36 C.F.R. § 261.10(c).

The Easement does not prevent the USFS from regulating the Beasleys' activities. The

Easement is a National Forest System road or trail, and there is sufficient evidence that the

Beasleys' activities affected, threatened, or endangered property of the United States

administered by the Forest Service. For these reasons, the Beasleys' activities occurred on lands

encompassed by 36 C.F.R. § 261.10(c), and the Magistrate Court did not err in denying the

Beasleys' motions to dismiss and finding the Beasleys guilty of conducting work activity or

service on lands encompassed by 36 C.F.R. § 261.10(c).

## C.  The Charging Document

Finally, Ms. Beasley argues that because the charging document listed the wrong date for

her violation, the charging document was legally insufficient. The Court reviews the sufficiency

of the charging document *de novo*. *United States v. Schmidt*, 947 F.2d 362, 369 (9th Cir. 1991).

The Sixth Amendment guarantees a criminal defendant the right "to be informed of the nature

and cause of the accusation." U.S. Const. amend. VI; *see In re Oliver*, 333 U.S. 257, 273 (1948)

("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in

his defense . . . are basic in our system of jurisprudence."). The demands of the Sixth

Amendment may, however, vary depending upon the severity of the punishment at risk. For

example, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall

enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI.

Nevertheless, in *Lewis v. United States*, 518 U.S. 322 (1996), the Supreme Court held: "The

Sixth Amendment's guarantee of the right to a jury trial does not extend to petty offenses, and its

scope does not change where a defendant faces a potential aggregate prison term in excess of six

months for petty offenses charged." *Id.* at 323-24.

According to Federal Rule of Criminal Procedure 58(b)(1), "[t]he trial of a petty offense may . . . proceed on a citation or violation notice." In all cases, a charging document "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007) (quoting *United States v. King*, 200 F.3d 1207, 1217 (9th Cir. 1999)). A charging document should also "fairly inform[] a defendant of the charge against which he must defend, and . . . enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). In addition, the Ninth Circuit has explained that "[v]astly different levels of judicial scrutiny apply to complaints and violation notices, respectively." *United States v. Boyd*, 214 F.3d 1052, 1057 (9th Cir. 2000). Further, as the Eleventh Circuit has stated: "Rule 58 contemplates that the charging document for a petty offense need not be as formal or require as much as an indictment or information would." *United States v. Kowallek*, 438 F. App'x 889, 890 (11th Cir. 2011).

Ms. Beasley was charged with and convicted of a Class B misdemeanor. This is a petty offense as defined by 18 U.S.C. § 19. The charging document here was a CVB Violation Notice, not a complaint, indictment, or information. The CVB Violation Notice lists the offense date as August 26, 2015, but the charged activity actually occurred on August 20, 22, and 23, 2015. Ms. Beasley argues that this inaccuracy impaired her ability to defend herself. The CVB Violation Notice, however, lists the place of the offense as "Derrick Rd Dispersed Area." Ms. Beasley's activities at the entrance to the Derrick Road Dispersed Area—directly on August 20 and August 23, and through her son on August 22, 2015—occurred in close proximity to the date listed on the charging document. Additionally, the offense is described as "conducting work activity or services unless authorized by special authorization." Ms. Beasley had an hour-

long conversation with Officer Necessary about outfitting without a permit at the entrance to the

Derrick Road Dispersed Area on August 20, 2015. Interpreting the charging document to include

facts that are necessarily implied and considering that a CBV Violation Notice may be less

formal than a complaint or indictment, the Court finds that the CVB Violation Notice was more

than sufficient to provide Ms. Beasley with a description of the charges against her and to enable

her to prepare a defense.

## CONCLUSION

Defendants-Appellants' Final Judgments of Conviction and Sentence are AFFIRMED.

**IT IS SO ORDERED**.

DATED this 29th day of April, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge